James Thomas Bridgeforth III
Dkt. No. WDQ-11-0102

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 FEB 22 PM 12:31
CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

To: Honorable Judge William D. Quarles, Jr.
United State District Judge
(Also)
Assistant U.S. Attorney: Joshua Kaul
(Also)
Supervisory U.S. Probation Officer: Reginald Morrison

I am writing in regards to my/our halfway house re-entry problems. As you may or may not be aware that we in Maryland are not receiving the correct amount of re-entry time. We, I excepted my plea agreement with the courts, then whom transferred my custody to FBOP to commence serving 120 sentence. The Second Chance Act 18 U.S.C.S 3624(c)(1) authorizes the Bureau of Prisons to consider placing inmates in residential re-entry centers for up to the final 12 months of their sentence, rather than merely the final 6 months. FBOP is only giving Maryland inmates 4 months or less regardless of amount of time served or where it was served or how you served it. I'm serving a 120 months, self surrendered to a federal camp and totally rehabilitated myself and only asking for your help (recommendation) to the FBOP regional office to at least give me the law of 54 days a year, at least 6 months halfway house, but up to 12 months but not to exceed my 10% time. This is not my law or your law but you do have the resources and knowledge to help me get what United States Courts and I agreed to once I signed and accepted full responsibility for

for my actions. This in no way am asking for an appeal, sentence reduction etc.. only law for an inmate that was sent to prison to do what he was supposed to do and thats get help, rehabilitate, change for the better, meet the 5 characteristic to receive more halfway house or Home confinment of the extra time that's actual still FBOP custody. I Also served 1 year in Right Turn Halfway House and wasn't credited that time, now I'm being told more time will be taken from me. My Arrest started Dec. 20, 2010 until May 11, 2020 if they don't take more. Thats 9 years 5-6 months served on a 10 years sentence. Please Help me get Justice Thats Do Is All Am Humbly requesting. Thanks for your time and Help

Honorable Judge William D. Quarles, Jr.
Assistant U.S. Attorney: Joshua Kaul
Supervisore Probation: Reginald Morrison

DKT. NO. WDQ-11-0102

James T. Bridgeforth III
#53128-037
FBOP
2400 Robert Miller Drive
Lewisburg, PA 17837

BOP Director Mark Inch
Central Office HQ
320 First Street, NW
Washington, DC 20534

James Bridgeforth, III

#53128-037, Unit-2
Federal Prison Camp
P.O. Box 2000
Lewisburg, PA 17837                    February 1, 2018


Congressman Elijah Cummings
2163 Rayburn HOB
Washington, DC 20515

RE: BOP Violating 18 U.S.C. § 3624

Dear Congressman Cummings:

    I am currently incarcerated at the above captioned federal institution. The purpose of this letter is to respectfully seek your assistance regarding an issue that is affecting every federal inmate by severely compromising his/her chances for successful reentry into society.

    Specifically, the new Bureau of Prisons (BOP) Director, Mark Inch, has issued a statement, which we are currently experiencing the effect of, that all halfway house placement will "average 4 months." The reality that we are experiencing is generally less than 4 months, even for inmates who have served lengthy sentences. (i.e. 10 years and over).

    The problem with this newly imposed directive is that it violates the Second Chance Act (18 U.S.C. § 3624) which mandates that <u>all</u> inmates be given an "individualized assessment" based on the "5 factors enumerated in 18 U.S.C. § 3621(b). The Courts have previously admonished the BOP regarding the present posture of a "categorical approach" to halfway house placement and, ultimately ruled against it. In <u>United States v. Woodall</u>, 432 F.3d 235 (3d Cir. 2005) the Third Circuit Court of Appeals ruled that the BOP's implementing regulations to 18 U.S.C. § 3624 were "invalid because they do not allow for the full consideration of the factors enumerated in 18 U.S.C. § 3621(b)."

    Currently, unmonitored, the BOP is now returning to the practice, ruled violative by the Court in <u>Woodall</u>, of using the "categorical approach" to halfway house placement. Reasonable inference allows the conclusion that, perhaps, the current budget constraints which threaten BOP staff cuts, afford no incentive for the BOP to release prisoners any earlier than mandated by their judgment. Obviously, the less inmates require less staff. This practice violates the statute governing reentry.

The Second Chance Act incorporates a safety valve of "home confinement," which the statute (§ 3624) mandates interaction for prerelease by the U.S. Probation Department, thus creating a viable alternative, with no additional cost to the BOP, to maintain sufficient reentry time, when the impediment of unavailable space in a particular CCC facility is the objection.

Congressman Cummings, the following group of bipartisan Senators, I believe, were incorporated to address this issue: Rob Portman (R-OH), Jon Cornyn (R-TX), Chuck Grassley (R-IA), Shelton Whitehouse (D-RI), Amy Klobuchar (D-MN), Thom Tillis (R-NC), and Brian Schatz (D-HI). Thus far, we have only seen the reentry time being reduced and are unaware of any progress by this committee.

It would be of great assistance to us if you could inform these Senators and various Congressmen and Congresswomen, who sit on a companion committee, of the aforementioned facts and circumstances and the need for their immediate influence and correction in the law. Otherwise, the residual affect of allowing the BOP to continue the practice of categorical halfway house placement could be devastating. Numerous inmates who have served lengthy sentences would return to society with no buffer to ease their way back into society and obtain housing, gainful employment and the necessary self esteem to have a chance at a successful transition. We all know the results without this buffer, recidivism, which is exactly what happened to Woodall. (432 F.3d, p. 238). Nobody wishes those results.

Thank you for your kindness and consideration and I would greatly appreciate some feedback and direction from you and your colleagues.

Yours Truly,


James Bridgeforth, III





```
LEWKG            *         INMATE EDUCATION DATA      *      02-06-2018
PAGE 001         *              TRANSCRIPT            *      14:14:29

REGISTER NO: 53128-037    NAME..: BRIDGEFORTH III          FUNC: PRT
FORMAT.....: TRANSCRIPT   RSP OF: LEW-LEWISBURG USP

------------------------------ EDUCATION INFORMATION ---------------------------
FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
LEW  ESL HAS    ENGLISH PROFICIENT       03-20-2012 1018 CURRENT
LEW  GED EARNED GED EARNED IN BOP        03-14-2013 1500 CURRENT

------------------------------ EDUCATION COURSES -------------------------------
SUB-FACL   DESCRIPTION                   START DATE STOP DATE  EVNT AC LV  HRS
LEW SCP    INDEPEND.COLLEGE CORRESPONENCE 07-01-2014 CURRENT
LEW SCP    REAL ESTATE INVESTING          10-16-2017 12-22-2017  P  C  P   10
LEW SCP    GEOMETRY                       01-11-2016 03-18-2016  P  C  P   10
LEW SCP    COMMERCIAL DRIVERS LICENSE     04-15-2015 07-08-2015  P  C  P   30
LEW SCP    RPP 3 CREDIT REPAIR            04-10-2015 07-07-2015  P  C  P   20
LEW SCP    HOW TO WRITE BUSINESS PLN RPP3 04-07-2015 06-30-2015  P  C  P   20
LEW SCP    RPP4 COMMUNITY RESOURCES       03-02-2015 03-02-2015  P  C  P    1
LEW SCP    RPP5 RELEASE REQUIREMENTS      03-02-2015 03-02-2015  P  C  P    1
LEW SCP    FORKLIFT TRAINING - SAFETY     10-28-2014 11-07-2014  P  C  P   16
LEW SCP    CHILDREN'S DAY/PARENTING 2014  08-08-2014 08-10-2014  P  C  P    8
LEW SCP    RELEASE PREP - HEALTH/WELLNESS 08-01-2013 08-01-2013  P  C  P    1
LEW SCP    HEALTH FAIR INFORMATION VII    08-01-2013 08-01-2013  P  C  P    4
LEW SCP    PER GROWTH-WRITTEN COMMUNICATN 06-26-2012 12-17-2012  P  C  P   20
LEW SCP    PER FINANCE-BUSINESS START-UP  07-11-2012 12-21-2012  P  C  P   20
LEW SCP    GED CLASS LEC                  06-13-2012 03-14-2013  P  C  P  430
LEW SCP    ADVANCED PARENTING 3           09-24-2012 01-04-2013  P  C  P   30
LEW SCP    ADVANCED PARENTING             07-09-2012 09-24-2012  P  C  P   30
LEW SCP    PER FINANCE-INTRO BUSINESS     04-20-2012 06-27-2012  P  C  P   20
LEW SCP    PER GROWTH-CRITINCAL THINKING  04-20-2012 06-26-2012  P  C  P   20
LEW SCP    PARENTING CLASS                04-06-2012 07-09-2012  P  C  P   30
LEW SCP    GED CLASS LEC                  04-19-2012 06-13-2012  C  W  I    0
LEW SCP    EMPLOYMENT-JOB VIEW KIOSK      03-21-2012 03-21-2012  P  C  P    1

------------------------------ HIGH TEST SCORES --------------------------------
TEST        SUBTEST       SCORE     TEST DATE   TEST FACL   FORM    STATE
GED         AVERAGE       494.0     03-14-2013  LEW         PASS    PA
            LIT/ARTS      490.0     03-14-2013  LEW         IH      PA
            MATH          500.0     03-14-2013  LEW         IH      PA
            SCIENCE       480.0     03-14-2013  LEW         IH      PA
            SOC STUDY     500.0     03-14-2013  LEW         IH      PA
            WRITING       500.0     03-14-2013  LEW         IH      PA
GED PRAC    LIT/ARTS      650.0     02-15-2013  LEW         PB
            MATH          510.0     02-15-2013  LEW         PB
            SCIENCE       450.0     02-15-2013  LEW         PB
            SOC STUDY     470.0     02-15-2013  LEW         PB
            WRITING       490.0     02-15-2013  LEW         PB
TABE D      BATTERY         8.8     04-13-2012  LEW         9
            LANGUAGE        7.4     04-13-2012  LEW         9
            MATH APPL       9.0     04-13-2012  LEW         9
            MATH COMP       7.8     04-13-2012  LEW         9

G0002      MORE PAGES TO FOLLOW . . .
```

```
REGISTER NO: 53128-037      NAME..: BRIDGEFORTH III         FUNC: PRT
FORMAT.....: TRANSCRIPT     RSP OF: LEW-LEWISBURG USP
```

```
------------------------------ HIGH TEST SCORES ------------------------------
TEST          SUBTEST        SCORE     TEST DATE      TEST FACL    FORM     STATE
TABE D        READING        10.5      04-13-2012     LEW          9
              TOTAL MATH     8.2       04-13-2012     LEW          9
```

G0000      TRANSACTION SUCCESSFULLY COMPLETED

Attachment 1

## GUIDELINES FOR INMATE TOWN DRIVER

This is a guideline statement for daily town trips made by the Federal Prison Camp, Lewisburg, Pennsylvania.

1. **GENERAL DESCRIPTION:** You are being assigned to the position of inmate town driver. The assignment carries with it a great deal of trust and responsibility. Your duties will require numerous contacts with the local public, and as such, you are a representative of the Federal Prison Camp, Lewisburg, Pennsylvania. Your actions must be geared to bringing credit to the institution.

2. **SUPERVISION - JOB CONTROLS:**

    A. Town driver will be supervised by the Garage Foreman and the Camp D/W Officers.

3. **GENERAL DUTIES:**

    A. Operate government vehicles (cars, vans, pick-up trucks) while providing transportation, as the driver, for institution staff, other government employees, and inmates generally to and from the institution.

4. **SPECIFIC DUTIES AND RESPONSIBILITIES:**

    A. Work with a minimum of supervision in an independent manner, while driving government vehicles and providing transportation for institution staff and inmate's being released to the surrounding commuting areas and on medical furlough to local offices and hospitals.

    B. Working hours will vary, in that the trips may be early or late in the day. Your scheduled time away from the institution may cause you to miss meal hours at the institution. You will be provided a brown bag meal.

    C. Responsibility for maintenance of the vehicles is not placed on the driver; however, cleaning of the vehicle will be maintained by the town driver. The same vehicles are generally used for these scheduled trips. The inmate town driver must ensure the vehicles are fueled and fluid levels are maintained, and that any problems

    or discrepancies regarding the vehicle are brought to staff's attention prior to departure.

    D. Any problems encountered during the trip, mechanical or otherwise, will be reported immediately by cell phone to the institution's Control Center, which has been pre-programmed into the cell phone.

5. **ADDITIONAL RESPONSIBILITIES:** As a town driver, you agree to the following conditions:

   A. You will not violate the laws of any jurisdiction (federal, state, or local).

   B. As previously noted, you will adhere to the provided itinerary and understand any failure to follow the itinerary or return to the institution at the designated time shall constitute an escape, and that you will be subject to prosecution.

   C. You will be financially responsible for all speeding, parking, or other traffic tickets issued to you. If you do not have sufficient funds to pay for the violations, you agree with having a hold on your commissary account until you pay all fines. In addition, traffic violations may result in your removal from this work assignment.

6. You will not purchase, possess, use, consume, or administer any narcotic drugs, marijuana, or intoxicants in any form. It has been determined that the consumption of poppy seeds may cause a positive drug test, which may result in disciplinary action. You will not consume any poppy seeds or items containing poppy seeds while in the community. You are aware that upon return to the institution, you may be subject to a urinalysis test or digital search, if the Warden reasonably believes you are concealing contraband in or on your person. You agree to contact the institution if any problems are encountered while in the community.

   This is a sensitive position with regard to dealing with staff and members of the community. Appropriate demeanor is expected at all times. You must maintain a personal appearance consistent with institution rules and policy. You are never to discuss anything regarding trip information with another inmate. The slightest deviation from schedules without proper notification to the institution will not be tolerated. You shall be provided a cell phone to contact the institution if schedule changes occur. Any valid complaint of inappropriate behavior shall result in disciplinary action and termination from the job.

_James Bridgeforth 53128-037_    X _James T. Bridgeforth_
Printed Name & Register No.    Inmate Signature

_J. Adams_    _12/5/17_
Unit Manager/Staff Witness    Date

cc: Inmate
    Inmate Central File



**U.S. Department of Justice**
Federal Bureau of Prisons
*United States Penitentiary*
*2400 Robert F. Miller Drive*
*Lewisburg, PA   17837*

August 1, 2017

RE: Bridgeforth III, James Thomas
Reg. No. 53128-037

To whom it may concern,

This letter is to inform you that James Thomas Bridgeforth III is currently incarcerated in the Federal Bureau of Prison and has been since March 19, 2012. He currently has a projected release date of September 12, 2020.

If you require any additional information, please contact Charles Berkoski, Case Manager, at, 570-523-1251.

Sincerely,

*Charles Berkoski*
Charles Berkoski,
Case Manager

ame: James Bridgeforth III
Number: 53128-039
rison Camp
2000
g, PA 17837



HARRISBURG PDBC 171
MON 12 FEB 2018 AM

United States District Courts
Clerk of Courts
Honorable Judge William D. Quarles
101 W. Lombard St.
Baltimore, MD. 21201



Inspected By Court Security Office
FEB 20 2018
Baltimore, MD

RECEIVED IN THE OFFICE OF A. DAVID COPPERTHITE
FEB 22 2018
UNITED STATES MAGISTRATE